IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GABRIELLE HANNA NICHOLS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) NO. 3:20-cv-00224-SRW |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Plaintiff Gabrielle Hanna Nichols commenced this action on April 1, 2020, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying her applications for child disability insurance benefits ("CIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"). *See* Doc. 1. Plaintiff filed her applications on October 19, 2017, alleging that she became disabled on April 1, 2010. (Tr. 20, 200-01, 164-65).[2] Plaintiff's applications were denied at the initial administrative level. (Tr. 20, 164-81, 182-99, 200-01). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), at which she appeared with an attorney. (Tr. 20, 38, 215-217). On April 24, 2019, the

---

[1] Kilolo Kijakazi became acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the actual transcript pages are denoted by the abbreviation "Tr."

ALJ issued an unfavorable decision. (Tr. 20-30). Plaintiff appealed that decision, and the Appeals Council denied Plaintiff's request for review on March 16, 2020. (Tr. 1-6). The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Docs. 1, at 2; 13, at 15-16. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 7, 8. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

**II.   STANDARD OF REVIEW AND REGULATORY FRAMEWORK**

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However,

reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] Additionally, "[t]he Social Security Administration has promulgated regulations that provide for the payment of disabled child's insurance benefits on the earnings record of an insured person who has died if the claimant is the insured person's child and is 18 years old or older with a disability that began before the claimant attained age 22." *Mills v. Berryhill*, No. 17-21832-CIV, 2018 WL 6446883, at *2 (S.D. Fla. Oct. 18, 2018) (citing 20 C.F.R. § 404.350(a)(5)). To make a disability determination, the Commissioner employs a five-step,

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

3

sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

>  (1) Is the person presently unemployed?
>
>  (2) Is the person's impairment severe?
>
>  (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
>  (4) Is the person unable to perform his or her former occupation?
>
>  (5) Is the person unable to perform any other work within the economy?
>
>  An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was 21 years old at the time she filed her applications for benefits and 22 years old at the time of the ALJ's decision. (Tr. 28, 41). Plaintiff is a resident of Opelika, Alabama, and lives with her mother and nephew. (Tr. 42, 307, 315, 323; Doc. 1, at ¶ 4). Plaintiff obtained her GED. (Tr. 23, 43).

Plaintiff claims that her ability to work is limited by fibromyalgia, clinical depression, and anxiety disorder. (Tr. 164). Plaintiff previously worked part-time for a doughnut shop and assisted her ex-boyfriend with feeding and monitoring chickens. (Tr. 22, 44-46).

Following the administrative hearing, where Plaintiff and a vocational expert testified, and employing the five-step process, the ALJ made the following enumerated findings:

1. Born on June 12, 1996, the claimant had not attained age 22 as of April 1, 2010, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: fibromyalgia, depression, attention deficit hyperactivity disorder (ADHD), anxiety-related disorders, and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except subject to the following limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (3) no work at unprotected heights or with dangerous machinery; (4) simple, routine tasks in a static work environment; and (5) no fast paced work or strict production quotas.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 12, 1996 and was 13 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2010, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(Tr. 22, 23, 24, 28, 29, 30).

**IV.   ISSUES ON APPEAL**

Plaintiff raises two issues on appeal, arguing that the Appeals Council failed to consider new and material evidence, which warranted a remand, and that the ALJ improperly substituted the ALJ's opinion for that of Dr. Kerry Cleary. (Doc. 13, at 1). The Commissioner maintains that the Appeals Council properly declined review because Plaintiff did not submit material evidence that related to the period on or before the ALJ's decision and that the ALJ properly considered Dr. Cleary's administrative medical finding under the new regulations. (Doc. 14, at 7, 11).

## V.     DISCUSSION

### A.     Evidence Submitted to the Appeals Council

Plaintiff argues that this case should be remanded because the Appeals Council improperly declined to review Plaintiff's case based on additional evidence that Plaintiff submitted after the ALJ's decision—specifically, a mental impairment questionnaire that was completed by Plaintiff's treating physician, Dr. William Freeman, on June 18, 2019. (Doc. 13, at 9).

The court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007). Evidence is properly presented if the evidence is "new and material," and it "relates to the period on or before the date of the hearing decision." *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5);[5] *Russell v. Astrue*, 742 F. Supp. 1355, 1382 (N.D. Ga. 2010) (citing *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-02 (11th Cir. 2008)). The Appeals Council must review a case if properly presented new evidence shows that "there is a reasonable probability that the additional

---

[5] The agency revised 20 C.F.R. §§ 404.970 and 416.1470 in December 2016, effective January 17, 2017, with compliance required as of May 1, 2017. *See* "Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process," 81 FR 90987-01, 90987, 2016 WL 7242991.

evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a). However, if the Appeals Council denies a request for review, it is "not required to provide a detailed discussion of the new evidence or an explanation as to why the claimant's new evidence would not change the ALJ's decision." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771, F.3d 780, 784-85 (11th Cir. 2014)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

Pursuant to 20 C.F.R. §§ 404.970(c), 416.1470(c), the Appeals Council provided Plaintiff notice explaining why it did not accept the additional evidence and advised her of her right to file a new application. (Tr. 2). The Appeals Council stated:

> You submitted a statement from William Freeman, M.D. dated June 18, 2019 (4 pages). The Administrative Law Judge decided your case through April 24, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 24, 2019.

(Tr. 2).

Dr. William Freeman completed a checklist mental impairment questionnaire in which he diagnosed Plaintiff with separation anxiety, social anxiety disorder, generalized anxiety, panic disorder with agoraphobia, PTSD and major depressive disorder. (Tr. 9). Dr. Freeman determined that Plaintiff's symptoms would frequently be severe enough to interfere with her attention and concentration, which would prevent her from performing simple work tasks. (Tr. 9). Dr. Freeman found that Plaintiff could occasionally understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request

assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions. (Tr. 9-10). Dr. Freeman also found that Plaintiff's symptoms would cause her to be absent from work for more than four days per month and that she could rarely maintain socially appropriate behavior and rarely adhere to basic standards of neatness and cleanliness. (Tr. 10). As to the question, "What is the earliest date that the description of symptoms and limitations in this questionnaire applies?" Dr. Freeman answered, "Initial onset 3 ½." (Tr. 11). Dr. Freeman drew a line from this question to the bottom of the page and hand-wrote that Plaintiff's separation anxiety started at age four. (Tr. 11). Dr. Freeman also wrote that at age five she was with her father and step-mother in a motor vehicle accident and one of her step-brothers died in the accident. (R. 11). Dr. Freeman further wrote, "fibromyalgia – Age 13" and "symptom picture > Age 13." (Tr. 11).

Plaintiff argues that Dr. Freeman's opinion is new, material, and relates to the time period at issue. (Doc. 13, at 9). The Commissioner contends that the questionnaire does not relate to the time period at issue, that the questionnaire is not material, and that Plaintiff fails to show a reasonable probability that questionnaire would change the ALJ's decision, given that Dr. Freeman's opinions are contradicted by the evidence during the relevant period. (Doc. 14, at 12-15). *See Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (where the Appeals Council refused to consider materials because they were not chronologically relevant and the Commissioner argued that the materials were also immaterial, the Court began its analysis addressing materiality).

The Social Security Administration revised its regulations regarding the consideration of medical evidence – applying those revisions to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Plaintiff filed her claim on October 19, 2017 (Tr. 20),

9

so the revised regulations apply. *See* 20 C.F.R. § 404.1520c. The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790-RDP, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021). In evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650-SPF, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the agency] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). "The most important factors . . . [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a); *Simon*, 2021 WL 4237618, at *3. "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative

medical finding based on these two factors. *See* 20 C.F.R. § 404.1520c(a)-(c). The ALJ may but is not required to explain how he considered the other remaining factors." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)(3)). The ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

Even if Dr. Freeman's opinion relates to the period on or before the date of the hearing decision, it was not material evidence as there is no reasonable probability that the additional evidence would change the outcome of the ALJ's decision. *Phillips v. Soc. Sec. Admin., Comm'r*, 833 F. App'x 308, 321–22 (11th Cir. 2020); *Wright v. Kijakazi*, No. 4:20-CV-455, 2021 WL 4315800, at *4 (N.D. Ala. Sept. 22, 2021) ("The Appeals Council does not have to consider chronologically relevant evidence if it is immaterial . . .."). "The ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight the ALJ will give that opinion." *Griffin v. Soc. Sec. Admin., Comm'r*, 842 F. App'x 339, 342 (11th Cir. 2021) (citations omitted). "[C]ourts have held that medical opinions that are articulated simply by checking blocks on a preprinted form are not persuasive evidence." *Collins v. Berryhill*, No. 5:17-CV-249-MJF, 2019 WL 1434584, at *17 (N.D. Fla. Mar. 29, 2019) (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting that opinion of a non-examining physician who merely checked boxes on a form without providing any explanation for his conclusions); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"); *Hammersley v. Astrue*, No. 5:08cv245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("check-off forms ... have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.")); *Foster*

*v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (opinion was not entitled to considerable weight as "the 'questionnaire' format typifies 'brief or conclusory' testimony"). Further, Dr. Freeman's completed questionnaire did not cite to any medical evidence to support his conclusions that the limitations existed when Plaintiff was 13 years old, which coincides with April 1, 2010, the alleged onset date. Dr. Freeman merely indicated the limitations via the questionnaire and did not provide any reference to Plaintiff's medical records from the relevant time period to support his conclusion that the limitations applied during the relevant time period. *See Griffin v. Soc. Sec. Admin., Comm'r,* 842 F. App'x 339, 342 (11th Cir. 2021) (finding that the ALJ likely would not give weight to the conclusions in the mental health statement because it did not reference any supporting evidence from the medical record or provide any reference to medical records from the relevant time period to support his conclusion that the limitations did apply during the relevant time period). There is no showing that Dr. Freeman examined Plaintiff in completing the questionnaire. "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005); *Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011) (stating "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work.").

Moreover, the records relating to the relevant time period reflect that Dr. Freeman prescribed Plaintiff medication (Tr. 345, 365-66, 370-71), but do not show that Dr. Freeman examined Plaintiff or saw her on a regular basis. In fact, medical records from Montgomery Psychiatry show that Plaintiff was treated by Mary Osborne, M.D. (Tr. 620, 865, 869, 874. 878), Pinkie Fitts, CRNP (Tr. 586, 589, 592, 595, 598, 601, 604, 608), and Robert Gonzalez, APN (Tr. 857, 861), but there are no treatment records from Dr. Freeman in the record. Clinical psychologist

Michele M. King, Ph.D., who also treated Plaintiff (Tr. 828-46), noted that Plaintiff switched from psychiatrist Dr. Edwards to Dr. Freeman in September 2015 and that Dr. Freeman later transferred Plaintiff's treatment to a nurse practitioner. (Tr. 609).

In addition to the lack of supportability, Dr. Freeman's opinions are contradicted by evidence during the relevant period cited by the ALJ. Dr. Freeman remarked that Plaintiff could only occasionally understand and carry out short and simple instructions. (Tr. 9). However, medical records during the relevant period repeatedly documented good memory, good to fair attention and concentration, and logical thought processes (Tr. 25, 585, 588, 591, 594-95, 597-98, 620, 855-56, 865, 869, 874, 878). Plaintiff also reported that she was able to count change and handle a savings account and check book, and she obtained her GED after the alleged onset date. (Tr. 27, 310, 318). Plaintiff's daily activities included assisting with household chores, preparing simple meals, shopping, caring for animals, managing her personal care and personal hygiene, and driving short distances (Tr. 24, 27, 42, 307-10, 315-18). The limitations posited by Dr. Freeman regarding Plaintiff's abilities to interact socially or maintain socially appropriate behavior (Tr. 10), also conflict with evidence showing that she was able to get along with others, date, shop, spend time with family and friends, use social media, and deal appropriately with authority. (Tr. 23, 310-13, 318-21, 835). Plaintiff also established good rapport with providers, was described as cooperative, had no problem getting along with providers and staff, and had no problems with temper control. (Tr. 24, 503, 515, 563, 585, 591, 595, 598, 601, 604, 620, 666, 668, 671, 865, 869, 874, 878). The record also showed that Plaintiff had appropriate grooming and hygiene and that medical providers repeatedly observed Plaintiff's appearance as appropriate, neat or clean (Tr. 24, 413, 415, 417, 424, 474, 478, 561, 563, 565, 567, 569) in contrast to Dr. Freeman's opinion that Plaintiff could rarely adhere to basic standards of neatness and cleanliness (Tr. 10). *See Hargress*

13

*v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1310 (11th Cir. 2018) (finding that doctor's medical form was not material evidence as it was inconsistent with medical evidence during the relevant time period and would not have changed the administrative result and therefore the Appeals Council did not have to consider it); *Griffin*, 842 F. App'x at 342-43 (finding that doctors' conclusions about the plaintiff's limitations were not supported by the other record evidence).

Accordingly, the court finds that that the Commissioner's decision is supported by substantial evidence as there is no reasonable probability that the additional evidence would change the outcome of the ALJ'S decision.

### B.     Dr. Kerry Cleary's Opinion

Plaintiff contends that the ALJ committed legal error by substituting the ALJ's opinion for that of state psychological consultant Dr. Kerry Cleary. (Doc. 13, at 13). The Commissioner argues that the RFC contains limitations addressing the same general issues assessed by Dr. Cleary, but that the RFC finding did not have to match or mirror Dr. Cleary's opinion; the Commissioner contends that substantial evidence supports the ALJ's mental RFC determination. (Doc. 14, at 9, 10).

The agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). State agency medical or psychological consultants are considered experts in Social Security disability evaluation. *Hanisee v. Comm'r of Soc. Sec.*, 797 F. App'x 449, 450 (11th Cir. 2019); 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). However, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence . . . as appropriate." *Id*.

"[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Rodriguez v. Comm'r of Soc. Sec.*, No. 618CV503ORL18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 618CV503ORL18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion."). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Id*. at 1055-56. An ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court . . .] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).

In this case, as to the presence and degree of specific understanding and memory capacities and/or limitations for Plaintiff, Dr. Cleary found that Plaintiff could "understand, remember short 1-2 step tasks but not those that are more detailed. Claimant can learn and remember a simple work routine if provided sufficient practice." (Tr. 178). As to sustained concentration and persistence capacities and/or limitations, Dr. Cleary found that "Claimant will be able to complete simple routine tasks but not detailed or complex tasks." (Tr. 178). Dr. Cleary also found that Plaintiff

15

could "benefit from regular rest breaks and a slower pace but will still be able to maintain a work pace consistent with the mental demands of competitive level work" and that changes in Plaintiff's work routine should be infrequent and gradually introduced. (Tr.178, 179). In determining Plaintiff's RFC, the ALJ concluded that Plaintiff had the capacity "to perform light work . . . except subject to the following limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (3) no work at unprotected heights or with dangerous machinery; (4) simple, routine tasks in a static work environment; and (5) no fast paced work or strict production quotas." (Tr. 24). Plaintiff argues that "in utilizing the opinion of Dr. Cleary, the ALJ re-words or paraphrases the limitations articulated by Dr. Cleary's opinion in a manner that materially alters its meaning, thus it is a substitution of the ALJ's opinion for that of Dr. Cleary." (Doc. 13, at 13). Specifically, Plaintiff maintains that the "ALJ alters this limitation to 'simple, routine tasks in a static work environment.'" *Id*. This argument is without merit, as the ALJ only references Dr. Cleary's opinion and does not misstate or "re-word" it. In discussing Dr. Cleary's opinion, the ALJ states:

> I also considered the assessment by State agency psychological consultant Kerry Cleary, MD (Exhibits 1A and 2A). I found this assessment persuasive, as the functional limitations noted are consistent with the claimant's intermittent troubles with managing herself, remembering things, and concentrating on tasks. I did not find additional limitations necessary based on the claimant's reported abilities and the sporadic noncompliance with treatment recommendations and counseling.

(Tr. 28).

The ALJ was under no obligation to adopt verbatim all of Dr. Cleary's limitations into the RFC. *See Abbington v. Berryhill*, No. CV 1:17-00552-N, 2019 WL 938884, at *9 (S.D. Ala. Feb. 26, 2019) ("[H]ere the ALJ only gave Dr. Harris's opinion 'some weight,' so the RFC could not be expected to mirror the opinion."); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's

determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Garrow v. Saul*, No. 5:19-CV-586-OC-18JBT, 2020 WL 5802493, at *6 (M.D. Fla. Aug. 19, 2020), *report and recommendation adopted sub nom. Garrow v. Comm'r of Soc. Sec.*, No. 5:19-CV-586-OC-18JBT, 2020 WL 5797867 (M.D. Fla. Sept. 29, 2020) ("[T]he ALJ's RFC did not have to mirror the opinion of any one doctor, even if the opinion of that doctor was given great weight."). The ALJ's limiting Plaintiff to simple, routine tasks; no fast-paced work; and a static work environment accounts for Dr. Cleary's opinion as to difficulties with complex tasks, the fact that Plaintiff would benefit from a slower pace, and the limitation to infrequent work changes. (Tr. 24, 178-79).

Also, the record reflects that in fashioning Plaintiff's RFC the ALJ also considered other evidence in the record. In reviewing records from Montgomery Psychiatry and Associates, the ALJ found that "[a]t her most recent appointment of record, she demonstrated good memory, fair attention and concentration, and logical thought processes." (Tr.25). The ALJ considered that the record failed to show significant distractibility during doctor appointments or an inability to complete testing that assesses concentration and attention. (Tr. 24). The ALJ found that Plaintiff was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions from medical providers, and there were no significant ongoing issues with her memory. (Tr. 23). The ALJ also considered Plaintiff's daily activities, which included assisting with household chores, watching television, using the internet, preparing simple meals, shopping, caring for pets, managing her personal care, and driving short distances. (Tr. 23, 27). The ALJ further considered that Plaintiff attained her GED after the alleged onset date. (Tr. 23, 27).

Accordingly, based upon a review of the whole record, the court concludes that the ALJ properly considered the entire record in determining Plaintiff's RFC, including Dr. Cleary's opinion and other evidence in the record, and that the ALJ's mental RFC determination is supported by substantial evidence.

## VI.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED. A separate judgment will issue.

DONE, on this the 29th day of September, 2021.

/s/ Susan Russ Walker  
Susan Russ Walker  
United States Magistrate Judge